IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs October 15, 2013

IN RE **ROBERT D.** ET AL.

Appeal from the Juvenile Court for Cumberland County
No. 2012-JV-2914     Larry M. Warner, Judge

No. E2013-00740-COA-R3-PT-FILED-JANUARY 17, 2014

This is a termination of parental rights action focusing on the two minor children ("the Children") of mother, Sandra W. ("Mother"). A termination petition was filed by the Tennessee Department of Children's Services ("DCS") after the third custody proceeding involving the Children. The petition alleges the statutory grounds of abandonment, substantial noncompliance with the permanency plans, and persistent conditions. Following a bench trial, the trial court granted the petition upon its findings, by clear and convincing evidence, that (1) Mother had abandoned the Children, (2) Mother had failed to substantially comply with the permanency plans, and (3) the conditions leading to removal still persisted. The court further found, by clear and convincing evidence, that termination of Mother's parental rights was in the Children's best interest. Mother has appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

John R. Williams, Crossville, Tennessee, for the appellant, Sandra W.

Robert E. Cooper, Jr., Attorney General and Reporter, and Mary Byrd Ferrara, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

## I. Factual and Procedural Background

Mother is a parent of four minor children who were the subject of a series of three separate DCS custody proceedings: twin sons Charles and Christopher, now age eighteen; Savannah, now age fifteen; and Robert, now age fourteen. The prior custody actions occurred in 2000 and from 2005 through 2007. Mother's drug use, the Children's truancy issues, domestic violence, and environmental issues in the home were the causes of the prior proceedings.

The most recent custody episode began when Robert was charged with vandalism and disorderly conduct in December 2010. Robert had previously been charged with truancy, vandalism, and unruliness at school. DCS scheduled numerous meetings with Mother concerning the matters. She cancelled, however, giving various reasons. DCS then petitioned, seeking custody of Robert based upon Mother's non-compliance and failure to cooperate.

On April 8, 2011, when Mother appeared before the trial court for a permanency plan review hearing, the court ordered Mother to submit to both urine and hair follicle drug screens. Mother refused and was consequently placed in jail for contempt of court. When Mother eventually complied, the drug screens proved positive for amphetamines, marijuana, and opiates. A few days later, DCS received a referral regarding Savannah, who was scheduled for truancy-related court proceedings due to thirty days of unexcused absences. At that point, DCS petitioned for and was granted custody of the remaining children. Three permanency plans were developed and ratified by the court during this most recent custody proceeding.

In the months to follow, Mother was incarcerated on five different occasions, the longest of which extended approximately four months. Mother failed or refused several drug screens during the custody proceeding. She was arrested for driving under the influence of an intoxicant ("DUI") as recently as September 16, 2012. DCS filed a petition seeking termination of Mother's parental rights relative to all four children on August 21, 2012.[1] The older twin sons reached the age of eighteen on June 3, 2013, and were accordingly dismissed from this action. A bench trial was conducted on February 15, 2013. The trial court granted the petition upon its findings, by clear and convincing evidence, that (1) Mother had abandoned the Children, (2) Mother had failed to substantially comply with the permanency

---

[1] DCS also sought termination of the parental rights of the biological father ("Father") of the Children in the same petition, which the trial court granted. Father has not appealed.

plans, and (3) the conditions leading to removal still persisted. The court further found, by clear and convincing evidence, that termination of Mother's parental rights was in the Children's best interest. Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1. Whether there was clear and convincing evidence to support termination of Mother's parental rights on the ground of abandonment by willful failure to support.

2. Whether there was clear and convincing evidence to support termination of Mother's parental rights on the ground of abandonment by failure to establish a suitable home.

3. Whether there was clear and convincing evidence to support termination of Mother's parental rights on the ground of abandonment by an incarcerated parent.

4. Whether there was clear and convincing evidence to support termination of Mother's parental rights on the ground of substantial noncompliance with the permanency plans.

5. Whether there was clear and convincing evidence to establish that the termination of Mother's parental rights was in the best interest of the Children.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *Id.*; Tenn. R. App. P. 13(d). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586, 597 (Tenn. 2010). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has instructed:

> In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36–1–113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36–1–113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State Dep't of Children's Servs. v. Mims* (In re N.B.), 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

## IV. Abandonment by Willful Failure to Support

The trial court, *inter alia*, terminated Mother's parental rights on the statutory ground that she abandoned the Children by willfully failing to support them. Tennessee Code Annotated § 36-1-113(g)(1) (Supp. 2013) provides, as relevant to this action:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

Tennessee Code Annotated § 36-1-102(1)(A) (2010) defines abandonment, in relevant part, as:

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

> . . .

> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; . . . .

Pursuant to the statute, the court must find that a parent's failure to visit or support was willful. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). As this Court has previously explained:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

*In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005).

Failure to visit or support a child is "willful" when a person is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id.* at 864.

This Court further explained:

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* (citations omitted). Further, as Tennessee Code Annotated § 36-1-102(1)(G) expressly provides: "Specifically, it shall not be required that a parent be shown to have evinced a settled purpose to forego all parental rights and responsibilities in order for a determination of abandonment to be made."

In its final judgment, the trial court included the following specific findings regarding Mother's willful failure to support the Children:

The Respondent, [Mother], has been incarcerated during the four consecutive months prior to the filing of this petition. [Mother] has been incarcerated from 9-17-11 to 9-18-11, from 9-26-11 to 11-9-11, on 1-26-12 and released same day, from 2-1-12 to 6-12-12 and from 7-19-12 to 7-20-12.

[Mother] willfully failed to support said children for four (4) months immediately preceding her incarceration. [Mother] has not contributed to the support of the children since they were placed in custody on 12-20-10 and 4-15-11. [Mother] is able bodied and capable of working and supporting the children prior to her incarceration. [Mother] was aware of her duty to support the children. [Mother] made no attempt to support the children prior to her incarceration and has provided no justifiable excuse for failing to support the children.

(Paragraph numbering omitted).

Having carefully reviewed the record in this cause, we conclude that the trial court's findings are supported by a preponderance of the evidence. The petition seeking termination of Mother's parental rights was filed on August 21, 2012. The proof adduced at trial demonstrated that Mother had been incarcerated for part of the four months immediately preceding the petition's filing and had failed to support or to make reasonable payments toward the support of the Children for four consecutive months immediately preceding her incarceration. Mother had, in fact, paid no support whatsoever during the time the Children had been in state custody, which was approximately two years at the time of trial. There was

no proof that Mother was incapable of working, as she represented to DCS that she was employed. Further, all three permanency plans referenced Mother's duty to pay child support for the Children, directing both the amount of such support and where it should be sent. The assigned DCS caseworker also testified that Mother was aware of her duty to pay child support. There is clear and convincing evidence demonstrating that Mother willfully failed to support these Children for at least four months prior to her incarceration. The trial court did not err in terminating Mother's parental rights based on this statutory ground.

## V. Abandonment by Failure to Establish Suitable Home

The trial court found, as an additional statutory ground for terminating Mother's parental rights, that she abandoned the Children by failing to establish a suitable home. Tennessee Code Annotated § 36-1-102(1)(A) also defines abandonment, in relevant part, as:

> (ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department; . . . .

In its final judgment, the trial court included the following specific findings regarding Mother's failure to establish a suitable home:

> The children were removed from the parents, [Mother] and [Father], as the result of a Petition filed in Juvenile Court in which the children were found to be dependent and neglected as defined by Tenn. Code Ann. §37-1-102(12) and

the children were placed in the Department's custody. The Juvenile Court found that the Department made reasonable efforts to prevent removal of the children or the circumstances of the children's situation prevented reasonable efforts from being made prior to the children's removal.

For a period of four (4) months following the removal of the children from the parents, the Department has made reasonable efforts to assist the parents, [Mother] and [Father], to establish a suitable home for the children, but the parents have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the children to such a degree that it appears unlikely that [Mother] or [Father] will be able to provide a suitable home for the children at an early date. That four month period of time following the removal for Robert [D.] was from 12-20-10 to 4-20-11 and for Savannah [D.] from 4-15-11 to 8-15-11.

The reasonable efforts the Department made in the first four months include making the children available for visitation, arranging supervision for the visitation, providing transportation for visitation, administering or attempting to administer drug screens to the parents, home visits to the parents' homes, pointing out environmental issues in home and instructing parent on how to remedy, arranging, paying for and providing transportation to a psychological intake appointment for the mother, provided information where the parents could obtain free [alcohol and drug] A&D assessments and paying the mother's electric bill.

The parents' lack of reasonable efforts includes not having suitable housing, continuing to abuse drugs and not cooperat[ing] with A&D treatment.

(Paragraph numbering omitted.) The trial court concluded that Mother had abandoned the Children by failing to provide a suitable home pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(ii).

The evidence preponderates in favor of the trial court's factual findings. Robert, having been found to be dependent and neglected by order of the trial court on December 20, 2010, was placed in the custody of DCS. Through that order, the court further found that DCS had made reasonable efforts to prevent Robert's removal but that Mother had continually refused to cooperate with in-home services needed to allow Robert to remain in her home. Similarly, Savannah was placed into DCS protective custody by the trial court on April 19, 2011, after Mother failed a court-ordered drug screen. By its order, the court found that reasonable efforts were made by DCS to prevent removal of the Children or that

-8-

the emergency nature of Savannah's condition or other circumstances prevented reasonable efforts prior to the Children's removal.

During a period of twenty-six months following Robert's removal and a term of twenty-two months following Savannah's removal, DCS made reasonable efforts to assist the Mother in establishing a suitable home for the Children. DCS visited Mother's home, provided information and advice to Mother regarding environmental hazards, and paid Mother's utility bill. DCS provided in-home services to Mother, which addressed such issues as parenting and housekeeping skills. DCS also scheduled a psychological assessment for Mother, which included paying for same and providing transportation. DCS further provided Mother with information regarding a free alcohol and drug assessment and obtained a placement for Mother at a treatment facility, which Mother was unable to attend due to her subsequent incarceration.

Despite these efforts by DCS, Mother made no reasonable effort to provide a suitable home for the Children. At the time of trial, Mother was still residing in the same home that previously presented environmental concerns; the home remained without electricity or running water. Mother's only means of heating the home was by use of a kerosene heater, but when DCS visited the home less than two weeks before trial, Mother was staying with a neighbor because she had no money to buy kerosene. Despite having completed outpatient treatment in 2011, Mother experienced a subsequent relapse, continuing to fail drug screens and incurring a recent DUI charge. Mother had been incarcerated multiple times during the most recent custody event, and other individuals who appeared to be under the influence of drugs were staying at her home at various times when DCS visited. Mother's dearth of effort demonstrates a lack of concern for the Children to such a degree that it appears unlikely that she will be able to provide a suitable home at an early date. The efforts of DCS to assist Mother clearly exceeded the efforts of Mother toward providing a suitable home for the Children. The trial court did not err in finding that Mother had abandoned the Children by failing to provide a suitable home and terminating her parental rights based on this statutory ground.

VI. Abandonment by Exhibiting Wanton Disregard Prior to Incarceration

As previously stated, Tennessee Code Annotated § 36-1-102(1)(A) (2010) defines abandonment, in relevant part, as:

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either

has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, **or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child**;

. . . .

(Emphasis added.) Regarding the ground of abandonment by wanton disregard, the statute does not limit the parent's conduct to any particular four-month period prior to incarceration. *In re Audrey S.*, 182 S.W.3d 838, 865 (Tenn. Ct. App. 2005).

The trial court found in its final decree, *inter alia*:

The Respondent, [Mother], engaged in such conduct prior to incarceration as to exhibit a wanton disregard for the welfare of the children. The Respondent's conduct in wanton disregard for the welfare of the children was continued drug abuse, ongoing criminal activity, repeated incarcerations, violating orders of protection, failure to support the children, neglect of the children, failing to maintain stable or appropriate housing for the children, not addressing the children's truancy issues, refusing services to address these issues, exposing the children to domestic violence, and exposing the children to drugs which contributed to the children's A&D issues.

The evidence adduced at trial preponderates in favor of these findings. There was no question that Mother continued to use drugs until the time of trial, despite efforts by DCS to obtain appropriate treatment for her. During the time the Children were in state custody, Mother failed and refused numerous drug screens and was repeatedly incarcerated for charges involving drug and alcohol use. Although Mother had recently sought outpatient treatment, she had not returned to see her drug counselor for five weeks. Mother provided no explanation. The DCS caseworker testified that the Children had significant truancy issues while living with Mother and had been exposed to drug use and domestic violence. At least one child had developed serious drug and alcohol issues himself, requiring two hospitalizations.

The applicable statute does not define "wanton disregard." We have previously explained the purpose behind this statutory section, however, as follows:

Tenn. Code Ann. § 36-1-102(1)(A)(iv) also reflects the commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child. Incarceration severely

-10-

compromises a parent's ability to perform his or her parental duties. A parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child. However, parental incarceration is not an infallible predictor of parental unfitness. Accordingly, Tenn. Code Ann. § 36-1-102(1)(A)(iv)'s second test for abandonment does not make incarceration alone a ground for the termination of parental rights. An incarcerated or recently incarcerated parent can be found guilty of abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child. Thus, the parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.

*In re Audrey S.*, 182 S.W.3d at 866 (internal citations omitted).

Tennessee courts have recognized in numerous cases that a parent's drug abuse and criminal activity can constitute a wanton disregard for the welfare of the child. *See In re S.L.A.*, 223 S.W.3d 295, 299 (Tenn. Ct. App. 2006); *In re Audrey S.*, 182 S.W.3d at 867-68; *In re Daysia D.*, M2012-00608-COA-R3-PT, 2012 WL 4503202 at *2 (Tenn. Ct. App. Sep. 28, 2012). For example, in *Daysia,* the mother was convicted of selling drugs within a school zone. *Id.* at *3. Mother admitted at trial that she also smoked marijuana at home while the children were present but in a different room. *Id.* This Court found that such behavior constituted a wanton disregard for the children's welfare. *Id.*

In the case of *In re Chyna L.M.D.*, E2012-00661-COA-R3-PT, 2012 WL 3776699 at *1 (Tenn. Ct. App. Aug. 31, 2012), the father was on probation when the child was conceived. He subsequently violated his probation by failing to appear for court and testing positive for illegal drugs. *Id.* The father was offered the opportunity to participate in the "Community Alternatives to Prison Program" ("CAPP"), which would have allowed him to complete his sentence in a halfway house and remain in the community with his girlfriend and child. *Id.* When the father appeared in court for a hearing, however, he behaved in such a manner that the CAPP offer of enhanced probation was withdrawn. *Id.* Consequently, the father's probation was revoked, and he was returned to prison. *Id.* This Court found that such conduct was sufficient to establish that the father exhibited a wanton disregard for the welfare of his unborn child. *Id.* at *5.

Similarly, in the case at bar, Mother continuously engaged in drug use and criminal behavior, which affected her ability to provide a suitable home for the Children. The

Children were exposed to drug use and domestic violence in the home. Mother failed to remedy her drug problem, which had existed for many years. Mother instead chose to embark upon a course of continuing drug abuse and criminal activity, leading to multiple incarcerations. We conclude that Mother clearly engaged in conduct prior to her incarceration that exhibited a wanton disregard for the welfare of the Children. There is clear and convincing evidence to support the trial court's termination of Mother's parental rights on this statutory ground.

## VII. Substantial Noncompliance with Permanency Plans

The trial court also terminated Mother's parental rights, *inter alia*, on the ground that she failed to substantially comply with the reasonable responsibilities set out in her permanency plans. Tennessee Code Annotated § 36-1-113(g)(2) (Supp. 2013) provides, relevant to this action, as follows:

> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to the provisions of title 37, chapter 2, part 4.

In its findings regarding Mother's efforts under the permanency plans, the trial court stated in relevant portion:

> The Respondent, [Mother], has not substantially complied with the provisions of the permanency plans and therefore her parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(2).

> The initial permanency plan for Robert dated 1-19-11 requires her to submit to an A&D assessment, follow the recommendations from the A&D assessment, submit to random urine and hair follicle drug screens, have a safe and stable home with utilities, have a mental health assessment, follow the recommendations from the mental health assessment, actively participate in family counseling with Robert, participate in child's educational meetings. The Court ratified the initial permanency plan on 4-8-11 and found that the plan was reasonable, necessary and in the best interest of the children.

> The initial permanency plan for the other children and a revised plan for Robert dated 5-3-11 requires her to only take medications prescribed to her by doctor, take medications as prescribed, submit to random urine and hair follicle drug screens, make prescription medications available to DCS case manager for pill counts, submit to an A&D assessment, follow the recommendations

from the A&D assessment until successfully completed, refrain from others who are known to abuse drugs or alcohol, obtain a mental health assessment, follow all recommendations from the mental health assessment, sign releases of information, maintain housing, pay utilities and rent monthly, provide proof to DCS of paying rent and utilities, obtain and maintain legal means of support, develop a budget, attend and actively participate [in] family counseling with Robert, and be involved in children's education by attending meetings. The Court ratified the initial permanency plan on 5-27-11 and found that the plan was reasonable, necessary and in the best interest of the children.

The revised permanency plan dated 10-24-11 requires her to only take medications prescribed to her by doctor, take medications as prescribed, submit to random urine and hair follicle drug screens, make prescription medications available to DCS case manager for pill counts, submit to an A&D assessment, follow the recommendations from the A&D assessment until successfully completed, refrain from others who are known to abuse drugs or alcohol, not use any illegal drugs, obtain a mental health assessment, follow all recommendations from the mental health assessment, sign releases of information, maintain housing, pay utilities and rent monthly, provide proof to DCS of paying rent and utilities, obtain and maintain legal means of support, develop a budget, follow all orders of the court, not incur any further legal charges, attend and actively participate [in] family counseling with Robert, and be involved in children's education by attending meetings. The Court ratified the revised permanency plan on 12-16-11 and found that the plan was reasonable, necessary and in the best interest of the children.

The requirements in the permanency plans are all reasonably related to remedying the conditions that necessitate foster care.

[Mother] has not completed the following requirements in the permanency plans: she has not successfully completed A&D treatment or aftercare, she continued to test positive for illicit drugs, she has incurred new criminal charges, she has not followed the recommendations from her mental health assessment and she does not have appropriate housing with all utilities.

The Department made reasonable efforts to assist [Mother] in complying with the requirements in the permanency plan by making the children available for visitation, arranging supervision for the visitation, providing transportation for visitation, administering or attempting to administer drug screens to the parent, home visits to the parent's home, pointing out environmental issues in home

-13-

and instructing parent on how to remedy, arranging, paying for and providing transportation to a psychological intake appointment for the mother, provided information where the parent could obtain free A&D assessments, paid the mother's electric bill, arranging, paying for and transporting her to a psychological evaluation, arranging and paying for hair follicle drug screens and attempting to assist her in obtaining in-patient treatment.

[Mother] was advised on 5-3-11 and 10-26-11 that failure to substantially comply with the permanency plans was grounds for termination of parental rights.

(Paragraph numbering omitted.)

Upon careful review, we determine that a preponderance of the evidence supports these findings. DCS personnel's testimony established that Mother was living in a home with no utilities, including no running water. Mother had never provided any proof of her employment or her prescriptions to DCS. Although Mother had submitted to a few drug screens, usually not when initially requested, she also had failed or refused numerous other drug screens. The caseworker testified that during one or two visits to Mother's home, another individual was present who appeared to be under the influence of drugs. Mother also continued to incur criminal charges and was repeatedly incarcerated.

The psychological examiner retained by DCS to perform Mother's mental health evaluation testified that Mother suffered from a serious substance abuse problem, such that it was difficult to discern whether Mother's symptoms were indicative of mental health issues or the result of substance abuse. The examiner further testified that Mother needed to be detoxified and participate in inpatient treatment. He opined that Mother's prolonged addiction would be particularly difficult to overcome. The drug counselor who had met with Mother during three outpatient appointments at the close of 2012 testified that Mother had not returned for five weeks by the time of trial. Mother had never contacted the counselor to explain why she had not honored her appointments. The counselor concluded that Mother was not trying to remedy her drug problem. As the counselor testified, she advised Mother concerning free Narcotics Anonymous meetings and suggested that Mother attend ninety meetings in ninety days. Mother, however, failed to attend any such meetings.

Regarding a parent's substantial noncompliance with a permanency plan, this Court has previously explained:

Terminating parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) requires more proof than that a parent has not complied with every jot and tittle

-14-

of the permanency plan. To succeed under Tenn. Code Ann. § 36-1-113(g)(2), the Department must demonstrate first that the requirements of the permanency plan are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place, and second that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met. Trivial, minor, or technical deviations from a permanency plan's requirements will not be deemed to amount to substantial noncompliance.

*In re M.J.B.*, 140 S.W.3d 643, 656-57 (Tenn. Ct. App. 2004) (internal citations omitted).

In the present action, the Department demonstrated that the requirements of the permanency plans were reasonable and related to remedying the conditions initially causing the Children to be removed from Mother's custody. The evidence also preponderates in favor of a determination that Mother's noncompliance with the reasonable requirements in her permanency plans was substantial, as she never seriously addressed her drug problem, did not follow the recommendations of her mental health evaluation, continued to incur criminal charges, associated with others who abused drugs, and did not maintain a suitable home with utilities to which the Children could return. We therefore conclude that there was clear and convincing evidence of the statutory ground of Mother's substantial noncompliance with the requirements of the permanency plans. The trial court did not err in terminating Mother's parental rights based upon same.

## VIII. Persistent Conditions

The trial court also found that Mother's parental rights should be terminated based upon the statutory ground of persistent conditions. Although Mother did not appeal the trial court's determination in this regard, we will nonetheless address this ground in our analysis due to the "importance of permanently placing children and the just, speedy resolution of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n. 14 (Tenn. 2010).

Tennessee Code Annotated § 36-1-113(g)(3) provides, as an additional ground for termination of parental rights:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that,

therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home; . . . .

The trial court made the following findings with regard to this statutory ground:

The children have been removed from the custody of their parents for more than six (6) months; the conditions which led to the removal of the children from the home of [Mother] and [Father] still exist and other conditions exist which in all probability would cause the children to be subject to further abuse and/or neglect, making it unlikely that the children could be returned to [Mother] or [Father] in the near future; there is little likelihood that these conditions will be remedied at an early date so that the children can be returned to [Mother] or [Father] in the near future; the continuation of the parent or guardian and child relationship greatly diminishes the child's chance of an early integration into a stable and permanent home and therefore their parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(3).

The conditions that led to the removal of the children from the homes of [Mother] and [Father] were drug abuse, mental health issues, poor parenting including lack of supervision and criminal activity on the part of both parents.

The conditions that prevent the children's return to the parents' homes are their ongoing criminal activity, drug abuse, failure to successfully complete A&D treatment, her failure to follow mental health recommendations, his failure to obtain a mental health assessment, their lack of appropriate housing, the lack of utilities in her home and his lack of income. She attended three A&D treatment sessions at CPR recently, but then quit going with no explanation. She refused a drug screen on 2-4-13.

(Paragraph numbering omitted.)

Upon a thorough review of the record, we conclude that these findings are supported

-16-

by a preponderance of the evidence. The Children were removed for a period of more than six months, and the predominant condition leading to removal, Mother's drug problem, still persists. Mother did not comply with treatment recommendations and continued to fail or refuse drug screens. She accrued drug and alcohol-related criminal charges up to the date of trial. There is little likelihood that this condition will be remedied in the near future, as the evidence at trial demonstrated that Mother had battled this issue for at least thirteen years and was doing little or nothing to address it. The evidence also demonstrated that continuation of the parent and child relationship greatly diminishes the Children's chances of integration into a safe, stable, and permanent home. We conclude that the trial court properly terminated Mother's parental rights based on this statutory ground as well.

## IX. Best Interest of Children

Finally, Mother contends that there was not clear and convincing evidence that termination of her parental rights was in the Children's best interest. We disagree. When a parent has been found to be unfit by establishment of a statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877. Tennessee Code Annotated § 36-1-113(i) (Supp. 2013) provides a list of factors the trial court is to consider when determining if termination of parental rights is in the child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Further, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular

-17-

visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

In determining that termination of Mother's parental rights was in the best interest of the Children, the trial court stated:

1.    [Mother] and [Father] have not made an adjustment of circumstances, conduct or conditions as to make it safe and in the children's best interest to be in the home of the parent.

2.    [Mother] and [Father] have failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that lasting adjustment does not reasonably appear possible.

3.  The physical environment of [Mother] and [Father]'s home is unhealthy and/or unsafe for the children.

4.  There is criminal activity in [Mother] and [Father]'s home.

5.  [Mother] and [Father]'s use of alcohol or controlled substances renders them consistently unable to care for the children [in] a safe and stable manner.

6.  [Mother] and [Father]'s mental and/or emotional status would be detrimental to the children and/or prevent them from effectively providing safe and stable care and supervision for the children.

7.  [Mother] and [Father] have not paid child support consistently with the child support guidelines promulgated by the Department pursuant to Tenn. Code Ann. § 36-5-101.

8.  [Mother] and [Father] have not paid a reasonable portion of the children's substitute physical care and maintenance when financially able to do so. They have not regularly provided food, clothing, toiletries, school supplies or the other things the children needed on a daily basis.

9.  [Mother] and [Father] continue to make lifestyle choices that prevent them from being able to parent the children or to provide a home for the children.

10. The children need to be released from the stigma of being foster children.

Thus the Court finds that [DCS] has proven by clear and convincing evidence that grounds for termination of parental rights exists and has proven by clear and convincing evidence that it is in the best interest of the children that all the parental rights of said Respondents to said children be forever terminated; . . . .

Again, we determine that the evidence adduced at trial supports the trial court's findings. This was the third custody proceeding involving these Children. At the time of trial, DCS had been involved with this family for approximately thirteen years. Mother had failed to make an adjustment of her circumstances or conduct such that it would be safe for the Children to be returned to her, despite reasonable efforts by DCS. By the time of trial, the Children had been in state custody for approximately two years. Mother's drug problem had persisted for many years without any substantial effort at remedying same by Mother. An appropriate adjustment does not appear reasonably possible. Although Mother had

-19-

continued visitation with the Children, there was no testimony regarding whether she maintained a meaningful relationship with them. Testimony was presented evincing that returning the Children to Mother would be detrimental to them emotionally, psychologically, and medically. Mother had not attended to the Children's medical, educational, or emotional needs while they were in her care, and the testimony established that she was unlikely to do so in the future.

DCS personnel testified that the Children were doing well in their current placements and that Robert especially needed significant environmental structure in order for his needs to be met. DCS employees opined that permanency could be achieved for the Children and that it was detrimental for the Children to remain in foster care indefinitely. Additional testimony was presented that Mother had, in recent months, aided one of her older sons in an attempt to run away from his DCS placement. According to the testimony, Robert was caught possessing cigarettes after Mother's visit with him in December 2011.

The DCS employees' testimony established that Mother had subjected the Children to an environment of drugs and domestic violence when they were in her home. Mother continued to test positive for illicit drugs, incur criminal charges, and allow other persons who were under the influence of drugs to remain in her home. According to the psychological examiner who assessed Mother, she needed to be detoxified and undergo serious inpatient drug treatment before her mental status could be accurately evaluated. He also explained that Mother's continuing drug use created a risk for the Children. The evidence supports a determination that Mother's mental and emotional status would prevent her from effectively providing safe and stable care for the Children. Finally, Mother had paid no child support despite being aware of her duty to do so.

Following a thorough review of the record, we conclude that there is clear and convincing evidence that termination of Mother's parental rights is in the best interest of the Children. We discern no error in the trial court's determination that Mother's parental rights should be terminated.

X. Conclusion

The judgment of the trial court terminating the parental rights of Mother is affirmed. Costs on appeal are taxed to appellant, Sandra W. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE